25-1515

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

FRANK CLAY, JR.,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Michigan
No. 1:24-CR-00128

**BRIEF FOR APPELLEE**

TIMOTHY VERHEY
*United States Attorney*

ALEXIA A. JANSEN
*Assistant United States Attorney*
Post Office Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .... iii

STATEMENT REGARDING ORAL ARGUMENT .... vii

STATEMENT OF JURISDICTION .... 1

ISSUES PRESENTED .... 2

STATEMENT OF THE CASE .... 3

A. Clay's Conduct and Arrest on July 9, 2024 .... 4
B. Indictment and Plea .... 9
C. Sentencing .... 10

SUMMARY OF THE ARGUMENT .... 14

ARGUMENT .... 16

I. Legal standard and standard of review .... 16

II. Clay possessed the firearm in connection with another felony offense. .... 17

III. Clay possessed a stolen firearm .... 26

IV. Clay's conduct recklessly posed a substantial risk of serious bodily injury to an officer. .... 33

V. The district court did not plainly err in ruling the sentence be consecutive to specific cases Clay was on parole for .... 38

CONCLUSION .... 48

CERTIFICATE OF SERVICE........................................................................49

CERTIFICATE OF COMPLIANCE ........................................................50

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .51

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Anderson v. City of Bessemer City*, 470 U.S. 564 (1985) .................. 17, 25

*Gall v. United States*, 552 U.S. 38 (2007) .................................................. 16

*Hubbard v Rewerts*, 98 F.4th 736 (6th Cir. 2024) ...................................... 30

*United States v. Abdalla*, 972 F.3d 838 (6th Cir. 2020) .......................... 16

*United States v. Albers*, 489 F. App'x 73 (6th Cir. 2012) ........................ 44

*United States v. Angel*, 576 F.3d 318 (6th Cir. 2009) .............................. 18

*United States v. Barnett*, No. 25-5355, 2025 WL 3244953 (6th Cir. Nov. 20, 2025) ........................................................................................ 44

*United States v. Berry*, 565 F.3d 332 (6th Cir. 2009) ........................ 38, 45

*United States v. Black*, No.23-1622, 2025 WL 1356614 (6th Cir. May 9, 2025) ............................................................................................ 30, 31, 32

*United States v. Booker*, 543 U.S. 220 (2005) ........................................... 46

*United States v. Brooks*, 763 F. App'x 434 (6th Cir. 2019) ...................... 37

*United States v. Burton*, 440 F. App'x 474 (6th Cir. 2011) ............... 23, 24

*United States v. Carroll*, No., 2024 WL 4953549 (6th Cir. Dec. 3, 2024) ......................................................................... 26, 28

*United States v. Carter*, 89 F.4th 565 (6th Cir. 2023) ............................. 40

*United States v. Coleman,* 15 F.3d 610 (6th Cir. 1994) ..................... 45, 46

*United States v. Dial*, 524 F.3d 783 (6th Cir. 2008) ................................. 34

*United States v. Falls*, 533 F. App'x 505 (6th Cir. 2013) .................. 23, 25

*United States v. Gibson*, 817 Fed. App'x 202 (6th Cir. 2020) ................. 26

*United States v. Golson*, 95 F.4th 456 (6th Cir. 2024) ............................36

*United States v. Grant*, 15 F.4th 452 (6th Cir. 2021).............................17

*United States v. Harmon*, 607 F.3d 233 (6th Cir. 2010) .........................42

*United States v. Harris*, 751 F.3d 123 (3d Cir. 2014) .......................28, 29

*United States v. Haywood*, 280 F.3d 715 (6th Cir. 2002)........................25

*United States v. Histed*, 93 F.4th 948 (6th Cir. 2024).............................27

*United States v. Houston*, 529 F.3d 743 (6th Cir. 2008) .........................16

*United States v. Howard*, 301 Fed. App'x 446 (6th Cir. 2008) ...20, 36, 38

*United States v. Irving*, 431 Fed. App'x 513 (7th Cir. 2011)...................37

*United States v. Jett*, 154 F.4th 459 (6th Cir. 2025) ...............................40

*United States v. Johnson*, 553 F.3d 990 (6th Cir. 2009) ............45, 46, 47

*United States v. Jones*, 81 F.4th 591 (6th Cir. 2023) .......................33, 37

*United States v. Kitchen*, 428 F. App'x 593 (6th Cir. 2011) ....................44

*United States v. Lamb*, No. 22-4031, 2023 WL 8628956 (6th Cir. Dec. 13, 2023)...............................................................................................31

*United States v. Massey*, 758 F. App'x 455 (6th Cir. 2018).....................45

*United States v. Mejia-Canales*, 467 F.3d 1280 (10th Cir. 2006) ...........36

*United States v. Miller*, Nos. 23-5270/5436, 2025 WL 459648 (6th Cir. Feb. 11, 2025) .........................................................................................45

*United States v. Monger*, 185 F.3d 574 (6th Cir. 1999) ..........................25

*United States v. Montgomery*, 491 F. App'x 683 (6th Cir. 2012) ...........23

*United States v. Neal*, 817 Fed. App'x 148 (6th Cir. 2020) .....................22

*United States v. Nunley*, 29 F.4th 824 (6th Cir. 2022)...........................17

*United States v. Pablo-Ramos*, 817 F. App'x 112 (6th Cir. 2020)..... 40, 43

*United States v. Parrish*, 915 F.3d 1043 (6th Cir. 2019) ........................ 16

*United States v. Paull*, 551 F.3d 516 (6th Cir. 2009) .............................. 31

*United States v. Pinet-Fuentes*, 888 F.3d 557 (1st Cir. 2018)................ 29

*United States v. Posley*, 706 F. App'x 313 (6th Cir. 2017) ...................... 22

*United States v. Potts*, 947 F.3d 357 (6th Cir. 2020).................. 41, 42, 45

*United States v. Salisbury*, No. 23-2071, 2024 WL 5075401 (6th Cir. Dec. 11, 2024) ......................................................................... 42

*United States v. Sands*, 4 F.4th 417 (6th Cir. 2021) ............................... 16

*United States v. Schock*, 862 F.3d 563 (6th Cir. 2017) ........................... 16

*United States v. Seymour*, 739 F.3d 923 (6th Cir. 2014) ........................ 18

*United States v. Shanklin*, 924 F.3d 905 (6th Cir. 2019)........................ 18

*United States v. Shields,* 664 F.3d 1040 (6th Cir. 2011).................. 24, 25

*United States v. Stacy*, No. 21-1427 (6th Cir. Feb. 28, 2022) ................. 42

*United States v. Stamper* 91 F.App'x 445 (6th Cir. 2004) ...................... 36

*United States v. Sturgis*, 48 F.3d 784 (4th Cir. 1995)............................. 37

*United States v. Taylor*, 648 F.3d 417 (6th Cir. 2011) ...................... 17, 23

*United States v. Terry*, 83 F.4th 1039 (6th Cir. 2023) ............................ 35

*United States v. Tripplet*, 112 F.4th 428 (6th Cir. 2024) ........................ 27

*United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008) ........................... 40

*United States v. Wilder*, 615 F. App'x 351 (6th Cir. 2015)...................... 22

*United States v. Wilkerson*, No. 20-5879, 2021 WL 2929721 (6th Cir. July 12, 2021) ............................................................... 21, 23

*United States v. Woods*, 26 Fed. App'x 448 (6th Cir. 2001) .............24, 25

**Statutes**

18 U.S.C. § 3231 ........................................................................ 1

18 U.S.C. § 3553 ........................................................................ 46

18 U.S.C. § 3553(a) .................................................................. passim

18 U.S.C. § 3742(a) .................................................................. 1

18 U.S.C. § 3742(e) .................................................................. 16

18 U.S.C. § 922(g) .................................................................... 9

18 U.S.C. § 922(g)(1) ................................................................ 3

28 U.S.C. § 1291 ........................................................................ 1

Mich. Comp. Laws § 333.7401 ................................................... 19

Mich. Comp. Laws § 333.7403(2)(a)(v) ..................................... 19

Mich. Comp. Laws § 750.82 ....................................................... 19

**Other Authorities**

U.S.S.G. § 1B1.1 ........................................................................ 34

U.S.S.G. § 2A1.4 ........................................................................ 33

U.S.S.G. § 2B3.1(b)(3)(A) .......................................................... 36

U.S.S.G. § 2K2.1 ...................................................................... passim

U.S.S.G. § 2L1.2 ........................................................................ 18

U.S.S.G. § 3A1.2(c)(1) ................................................................ 10

U.S.S.G. § 3C1.2 ...................................................................... passim

U.S.S.G. § 5G1.3 ...................................................................... passim

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 18 U.S.C. § 3231 because Defendant-Appellant Frank Clay, Jr. was charged with federal crimes. On June 3, 2025, the court entered its judgment of conviction and sentence. Clay filed a notice of appeal on the same date. This Court has appellate jurisdiction to review Clay's conviction under 28 U.S.C. § 1291; its authority to grant relief from the sentence is set forth in 18 U.S.C. § 3742(a).

## ISSUES PRESENTED

1. Whether the district court clearly erred by applying a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for Clay possessing a firearm in connection with drug trafficking.
2. Whether the district court clearly erred when applying a two-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(4)(A) after concluding the firearm was stolen.
3. Whether the district court procedurally erred by applying a two-level enhancement under U.S.S.G. § 3C1.2 for Clay's actions resisting arrest, including when he bit an officer.
4. Whether Clay waived his challenge to the adequacy of the district court's consecutive sentencing explanation or invited the alleged error. If not, whether the district court plainly erred when ordering Clay's federal sentence be consecutive to any sentence for state parole violations.

## STATEMENT OF THE CASE

Defendant-Appellant Frank Clay, Jr. pled guilty to being a felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1)§ . At sentencing, the district court ruled on a number of objections to the United States Sentencing Guidelines[1] (U.S.S.G. or "guidelines") and ultimately determined Clay's total offense level was 29, criminal history category was VI, and guidelines range was 151 to 188, however the range was limited by the statutory maximum of 180 months. To reach this calculation the district court, overruling each of Clay's objections: 1) applied a four-level enhancement for Clay's possession of a firearm in connection with another felony offense; 2) applied a two-level enhancement for possession of a stolen firearm; and 3) applied a two-level enhancement for Clay recklessly creating a substantial risk of serious bodily injury to another during his arrest. The court further ordered Clay's federal sentence be consecutive to any remaining term of imprisonment on four prior state court convictions for which Clay had been on parole at the time of the instant offense.

[1] Citations to the United States Sentencing Guidelines Manual are to the 2024 guidelines, in effect on the date of Clay's sentencing hearing.

The district court denied Clay's request for a downward variance and imposed a bottom of the guidelines sentence of 151 months. Clay appeals each of the sentencing enhancements applied by the court, along with the court order the sentence be consecutive to his prior convictions.

**A. Clay's Conduct and Arrest on July 9, 2024**

Just after midnight on July 9, 2024, the Grand Rapids Police Department ("GRPD") received a 911 call from a local party store related to a disorderly person—Clay—in the store. R.35: Presentence Investigation Report ("PSR"), PageID.106; Gov. Sent. Ex. 2: 911 calls.[2] Two other store patrons attempted to intervene as Clay spoke to the store clerk who made the 911 call. R.53: Sent. Tr, PageID.268 (describing "some sort of verbal altercation" involving Clay); Gov. Sent Ex. 1A.

---

[2] At Clay's sentencing hearing, the United States admitted several exhibits. Exhibits 1A, 1B, 1C, 1D, 2, and 3 are video and/or audio exhibits submitted to the court via external drive. *See* R.41: Media Exs., PageID.179. Government's Sentencing Exhibit 8 is a report admitted during the sentencing hearing that was not previously provided in the record. Clay submitted such exhibits to this Court via thumb drives in connection with the Appellee Brief. Dkt. 26. This Brief will refer to those exhibits as "Government's Sentencing Exhibits." As the media exhibits include the identity of witnesses and victims, the court granted the United States' motion to file the exhibits under seal. R.40: Order, PageId.178. The Government's Sentencing Memorandum includes a description of the contents of the media exhibits. R.36: Gov. Sent. Memo at n.1-3, PageID.151.

Approximately six minutes after the first 911 call, the store clerk made a second 911 call to GRPD. R.35: PSR, PageID.106; Gov. Sent. Ex. 2: 911 calls. During the second call, the clerk and one of the patrons that intervened reported that Clay had left the store but was outside "with a pistol" and was "swinging it around, waiving a[t] peoples cars and stuff." *Id.*; R.35: PSR, PageID.106.

A few minutes after the second 911 call, GRPD officers arrived at the scene but Clay had already departed. Officers began to interview witnesses – the store clerk and the two patrons that intervened. The clerk reported he heard gunshots down the street from the store. Gov. Sent. Ex. 3: Officer Body Cam Footage ("Body Cam") at 00:00 – 00:13. The patrons confirm seeing Clay with a pistol. Gov. Sent. Ex. 3: Body Cam at 00:40 – 02:25. While speaking with officers outside the store, one of the witnesses identified Clay walking down the street toward them. *Id.* at 03:42. The witness confirmed to the officers he was confident the person approaching was the same person who had a pistol. *Id.* at 03:54.

GRPD officers then approached Clay, repeatedly instructing him to stop and put his hands up. *Id.* at 04:00-04:35. Clay continued walking, tossing something in the direction of the officers and turning down a street. *Id.* With the witnesses still nearby, officers utilized a taser on Clay and tried to physically restrain him. *Id.* Officers managed to handcuff Clay and started to roll Clay onto his back. *See* R.35: PSR, PageID.107. During that time, one officer stated they see Clay reaching toward his waistband; other officers announce they see a gun. *Id.*; Gov. Sent. Ex. 3 at 06:17. Officers then worked to restrain Clay so he cannot access the gun and to recover the gun from Clay's waistband. As they did so, one officer stated Clay was biting him. *Id.* at 06:26 – 06:30. Clay is then struck in the face to stop the biting. *Id.*

Officers recovered the firearm, a Smith & Wesson M&P Shield .40 caliber pistol. R.35: PSR, PageID.107. After Clay and the firearm were secured, the officer who was bitten indicated that Clay had bit the officer's penis. Gov. Sent. Ex. 3 at 07:09. Clay's person was searched and officers located $228.98 and a plastic bag containing several smaller baggies of a white substance:



R.36-3: Gov. Sent. Ex. 5, PageID.163. The baggies were submitted to the State of Michigan, Grand Rapids Forensic Laboratory for analysis. The laboratory described the contents of the bag as:

1 - Sealed plastic evidence bag (Agency Item #5) containing:
- one tape sealed envelope holding
  - one knotted plastic bag holding
    - ten knotted plastic bag corners each containing off-white chunky material (one weighed and analyzed)
    - one knotted plastic bag corner holding
      - seven knotted plastic bag corners each containing off-white chunky material
      - loose off-white chunky material
      - two knotted pieces of plastic

R.36-4: Gov. Sent. Ex. 6, PageID.164. As noted in the description, the laboratory tested only one of the baggies and determined it contained .91 grams of cocaine. *Id.* ("one weighted and analyzed"). While processing the evidence and Clay, officers discovered that the firearm recovered had been reported stolen on March 18, 2024, and that Clay was on state parole. R.35: PSR, PageID.107.

Clay was arrested on state charges and for parole violations. Both Clay and the officer he bit went to the hospital for treatment. R.35: PSR, PageID.107. The officer had a cut on one thumb and blood on his groin where Clay bit him. *Id.*

On the date of this incident, Clay was on parole for four different state convictions:

1. 2012 conviction for operating while intoxicated (3rd offense). R.35: PSR ¶ 58: Case No. 12-00598-FH, PageID.121-22.
2. 2014 conviction for delivery/manufacture of marijuana. *Id.* ¶ 59: Case No. 14-02235-FH, PageID.123-24
3. 2016 conviction for delivery/manufacture of less than 50 grams of a narcotic. *Id.* ¶ 62: Case No. 16-10067-FH
4. 2018 convictions for delivery/manufacture of less than 50 grams of a narcotic, firearm possession, and assault/resisting/obstructing a police officer. *Id.* ¶ 63: Case No. 18-06232-FH, PageID.128.

Clay was released on parole for the above convictions on March 5, 2024. *Id.* In addition to the four felony convictions listed above, Clay has three other felony convictions from between 2007 and 2010. *See id.*, PageID.106.

Further investigation into the firearm determined it was manufactured in Massachusetts with a frame manufactured in Connecticut. *Id.*, PageID.109.[3]

**B. Indictment and Plea**

On September 11, 2024, Clay was indicted by a federal grand jury with one count felon in possession of a firearm. R.1: Ind., PageID.1. On January 14, 2025, Clay pled guilty to the indictment before a magistrate judge. R.28: R&R, PageID.53-54. On January 29, 2025, the district court accepted Clay's plea. R.31: Order, PageID.57.

---

[3] In a footnote Clay asserts of 18 U.S.C. § 922(g) is unconstitutional as-applied to him because he was unaware of the interstate nexus of the firearm, but acknowledges binding Sixth Circuit case law firmly rejecting that argument. App. Br. at 26-27. This objection was not raised or preserved in any form at the district court level. Additionally, the firearm in question clearly has the text "Springfield, MA U.S.A." stamped on it. *See* R.36-2: Gov. Sent. Ex. 4, PageID.162.

**C. Sentencing**

Clay's sentencing hearing was scheduled for June 2, 2025. R.29: Not., PageID.55. Leading up to sentencing, both parties filed responses and objections to the Probation Office's initial presentence investigation report which calculated Clay's guidelines to be an offense level of 33 and criminal history category VI for an imprisonment range of 235-293 months. R.32: Initial PSR, PageID.58-96[4]; R.33: Gov. PSR Resp., PageID.97-100; R.34: Def. PSR Resp., PageID.101-02.

Clay's final PSR, which was ultimately adopted by the district court without change, *see* R.45: Statement of Reasons, PageID.196, calculated Clay's guidelines to be an offense level of 29 and criminal history category VI (based on 18 total criminal history points) for a guideline range of 151-180. R.35: PSR ¶¶ 20-66, PageID.109-29. The guideline range of imprisonment was limited by the statutory maximum of 180 months. *Id.* ¶ 118, PageID.139. The PSR further noted that pursuant to U.S.S.G. § 5G1.3(d), it was recommended that the term of imprisonment imposed

[4] The initial PSR included a 6-level official victim adjustment to the offense level under U.S.S.G. § 3A1.2(c)(1). R.32: Initial PSR ¶ 24, PageID.65. The final PSR did not include that adjustment, but instead included a two-level adjustment for reckless endangerment during flight under U.S.S.G. § 3C1.2.

be consecutive to any time remaining on Clay's four state cases for which he had been on parole. *Id.*, PageID.139, 148-49.

The offense level calculation included three enhancements and adjustments, each of which Clay objected to at sentencing and which he appeals now. First, a two-level enhancement because the firearm Clay possessed had been stolen. *Id.* ¶ 22, PageID.110 (U.S.S.G. § 2K2.1(b)(4)(A)). Second, a four-level enhancement based on Clay's possession of a firearm in connection with another felony offense – possession with intent to distribute cocaine and felonious assault. *Id.* ¶ 23 (U.S.S.G. § 2K2.1(b)(6)(B)). Third, a two-level adjustment for obstruction of justice for reckless endangerment during flight. *Id.* ¶ 26 (U.S.S.G. § 3C1.2).

Both parties submitted sentencing memoranda addressing Clay's objections to the PSR and the sentencing factors under 18 U.S.C. § 3553(a). R:36 – R.36-4: Gov. Sent. Memo. and Exhibits 1A-6, PageID.150-165; R.39: Def. Sent. Memo. and Mot. for Downward Variance, PageID.169-77; R.42 – R.42-1: Gov. Resp. and Exhibit 7, PageID.180-86.

At the sentencing hearing, Clay objected to the three contested sentencing enhancements, requested his sentence be concurrent to any state court sentence, and requested a downward variance. R.53: Sent. Tr, PageID.258-264, 296-98. The United States submitted testimony from a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and admitted Government's Sentencing Exhibits 1-8 for the district court's consideration. R.53: Sent. Tr., PageID.265-91. Following arguments from both sides, the district court overruled Clay's objections and applied all three of the contested sentencing enhancements, adopting the PSR guideline calculation with a guideline range of 151 to 180 months. *Id.* PageID.289-300.

The district court – after detailing consideration of the 18 U.S.C. § 3553(a) factors, the advisory guidelines, and Clay's arguments for a downward variance – imposed a sentence of 151 months. *Id.* PageID.308-312. The court highlighted Clay's significant criminal record, repeat parole violations, the need for specific deterrence, and the need to protect the public. *Id.* PageID.310-312. When turning to the officer's interaction with Clay on the night of his arrest, the district court noted:

> I'm frankly troubled by [Clay's] allocution indicating that the officers were somehow not appropriate as they confronted him. The officers had a report that he had a gun. He was refusing to obey commands, and to assert that they were somehow too rough with him under the circumstances, the Court has seen the tape, that's ridiculous.

*Id.* PageID.311. Before turning to supervised release conditions, the district court also stated that the sentence would be consecutive "to any remaining term in Docket Numbers 12-598, 14-2235, 16-10067, and 18-06232." *Id.* PageID.312.

Clay now appeals his sentence on several grounds.

## SUMMARY OF THE ARGUMENT

The district court's sentence is procedurally reasonable. The district court's calculation of Clay's guidelines was not erroneous. First, the district court appropriately applied a four-level enhancement for Clay's possession of a firearm in connection with another felony offense, under U.S.S.G. § 2K2.1(b)(6)(B), specifically possession with intent to distribute/deliver cocaine. The district court properly held that a preponderance of the evidence established that Clay possessed the firearm in connection with a felony offense for drug trafficking. It was far from clear error to conclude Clay intended to distribute the 10 baggies of cocaine he possessed.

Second, the district court appropriately applied a two-level guidelines enhancement under U.S.S.G. § 2K2.1(b)(4)(B) because the firearm Clay possessed was stolen. Using reports detailing statements the firearm's owner made to police several months before the pistol was found on Clay's person, the district court found by a preponderance of the evidence the pistol had been stolen.

Third, the court properly applied a two-level guidelines enhancement under U.S.S.G. § 3C1.2 for Clay's conduct while resisting

arrest, including biting one of the officers, which created a substantial risk of serious bodily injury to a law enforcement officer.

Finally, Clay waived any argument, or invited the alleged error, that the district court failed to adequately consider or explain its decision to run Clay's sentence consecutively. Even if the argument is reviewable, the district court committed no plain error when ruling Clay's federal sentence of imprisonment be consecutive to any time he was ordered to serve for violating his state of Michigan probation terms on four separate cases.

# **ARGUMENT**

## I. Legal standard and standard of review

Each of Clay's challenges are to the procedural reasonableness of his sentence. Ordinarily, the reasonableness of a criminal sentence is reviewed under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 51 (2007). "A criminal sentence must be both procedurally and substantively reasonable." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). Among other things, "[p]rocedural reasonableness requires the court to properly calculate the guidelines range." *Id.* (internal quotation marks omitted). The defendant has the burden of showing that the court abused its discretion. *United States v. Houston*, 529 F.3d 743, 756 (6th Cir. 2008); *United States v. Sands*, 4 F.4th 417, 420 (6th Cir. 2021).

A district court may make "reasonable inferences from the facts in the record when fashioning a sentence." *Parrish*, 915 F.3d at 1048. The Court provides due deference to the district court's application of the guidelines to the facts. 18 U.S.C. § 3742(e); *United States v. Abdalla*, 972 F.3d 838, 850 (6th Cir. 2020); *see also United States v. Schock*, 862 F.3d 563, 567 (6th Cir. 2017)

After the district court has resolved an objection to the guideline calculation, this Court reviews factual findings for clear error and legal interpretations of the guidelines de novo. *United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022). A district court's factual finding is not clearly erroneous so long as it is "plausible in light of the record viewed in its entirety." *United States v. Grant*, 15 F.4th 452, 457 (6th Cir. 2021) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

## II. Clay possessed the firearm in connection with another felony offense.

The guidelines provide for a four-level enhancement when a firearm was "used or possessed . . . in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). It is undisputed that at the time of his arrest, Clay had both a firearm and cocaine on his person. The district court, after reviewing the uncontested facts in the PSR, hearing testimony, and reviewing exhibits, properly applied this enhancement.

A district court ruling that a firearm was possessed in connection with another felony is a factual finding this Court reviews "for clear error and [with] 'due deference' to the district court's determination that" the enhancement is warranted by a preponderance of the evidence. *United States v. Taylor*, 648 F.3d 417, 432-33 (6th Cir. 2011); *United States v.*

*Seymour*, 739 F.3d 923, 929 (6th Cir. 2014); *United States v. Shanklin*, 924 F.3d 905, 919 (6th Cir. 2019).

The guidelines commentary provides that this enhancement applies if the firearm "facilitated, or had the potential of facilitating another felony," U.S.S.G. § 2K2.1 cmt. n. 14(A), and includes "any federal, state, or local" felonies, other than firearm possession or trafficking, *id.* § 2K2.1 cmt. n. 14(C). The commentary further notes the enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs." *Id.* § 2K2.1 cmt. n. 14(B). "Drug trafficking offenses" are defined elsewhere in the guidelines to include "an offense under federal, state, or local law that prohibits the . . . distribution . . . of the possession of a controlled substance . . . with the intent to manufacture, import, export, distribute, or dispense." *Id.* § 2L1.2 app. n.2. "Ultimately, [this enhancement] applies if the firearm had some emboldening role in a defendant's felonious conduct." *Shanklin*, 924 F.3d at 920 (citing *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009)).

The United States and the PSR argued that this enhancement applied both because there was evidence Clay committed a felonious

assault with the firearm in violation of MCL 750.82 based on witness statements and a 911 call (Gov. Sent. Exs 2 and 3) and separately the enhancement applied with respect to drug distribution offenses. When applying this enhancement, the district court stated that felonious assault was "a close call," and ultimately relied on the Michigan law felony for possession of cocaine with intent to deliver. R.53: Sent. Tr., PageID.299; *see* MCL 333.7401.[5] Clay does not dispute that he possessed both a firearm and cocaine when he was arrested. The items were clearly "in close proximity" as both were on his person, and therefore, the only issue Clay raises is whether the evidence was sufficient to establish by a preponderance that Clay intended to distribute or deliver the cocaine, making the felony a "drug trafficking offense."

The district court made explicit factual findings on the record, ruling that this sentencing "enhancement is appropriate based on the drugs that are found on the defendant's person," and noting:

> [t]here's 10 baggies of cocaine individually packaged. [Clay] does have some amount of cash, although I must say there's not a whole lot of cash there. But the 10 baggies of cocaine as described in the lab report while the defendant is in

[5] Simple possession of cocaine is also a felony under Michigan law, punishable by up to 4 years in prison. MCL 333.7403(2)(a)(v) § .

> possession of the firearm is clear evidence in the Court's judgement of drug dealing.

R.53: Sent. Tr., PageID.299. A district court determination "must be based on 'reliable information' and 'a preponderance of the evidence.'" *United States v. Howard*, 301 Fed. App'x 446, 450 (6th Cir. 2008). The district court's reliance on the laboratory report, photos, videos, and uncontested facts in the PSR were sufficient. At the time of his arrest, Clay was on state parole for three felony drug distribution offenses. R.35: PSR ¶¶ 59, 62, 63, PageID.123-29.

Clay's primary argument is that the quantity of cocaine he possessed is insufficient for the district court to have found by a preponderance that he was engaged in drug trafficking. But Clay attempts to confuse and minimize the weight of the drugs he possessed. The district court was, and this Court is, able to review the unchallenged laboratory analysis of the drugs in Government's Sentencing Exhibit 6. *See* R.36-4, PageID.164. Clay possessed "one knotted plastic bag holding . . . ten knotted plastic bag corners each containing off-white chunky material (one weighed and analyzed) [and] one knotted plastic bag corner holding . . . seven knotted plastic bag corners each containing off-white chunky material." *Id.*; *see also* R.36-3: Gov. Sent. Ex.5, PageID.163 (photo

of cocaine). The single baggie, of many, weighed and analyzed, was .91 grams. The PSR stated Clay was found to have "a plastic bag containing eleven smaller baggies" which "contained approximately 16.92 grams of cocaine base." R.35: PSR ¶ 11, PageID.107. That quantity of cocaine, alone, is comparable to what other courts have found to be distribution-level amounts. *See United States v. Wilkerson*, No. 20-5879, 2021 WL 2929721, at *4–5 (6th Cir. July 12, 2021) (12 grams of cocaine).

Clay did not challenge the factual recitation of the PSR, did not challenge laboratory analysis findings or the admission of the report, and in fact his attorney endorsed that he possessed "16 grams of cocaine." R.53: Sent. Tr., PageID.259. Clay now claims that he only possessed .91 grams of cocaine – ignoring that the laboratory analysis clearly states that only one of the baggies was analyzed.

In a footnote, Clay also misconstrues the testimony related to Government's Sentencing Exhibit 6, claiming that the agent testified that "the entire evidence bag" was tested. App. Br. at 35 n.6. But again, that testimony was consistent with the uncontested laboratory analysis and Clay's statements before the district court. *See* R.53: Sent. Tr.,

PageID.279-280 ("Q: Did the [laboratory] confirm that the baggie, which contained several other little baggies, contain cocaine? A: Yes, it did.").

As is evident in the case law surrounding this enhancement, the determination of whether evidence supports drug trafficking versus mere possession and the connection between the firearm and drugs is inherently a case-by-case factual inquiry. *See United States v. Wilder*, 615 F. App'x 351, 352 (6th Cir. 2015) (affirming enhancement based on 1.1 grams of crack, marijuana, 3 grams of heroin (subdivided into six .5 gram bags), drug sales, cash, and drug paraphernalia); *United States v. Neal*, 817 Fed. App'x 148 (6th Cir. 2020) (affirming enhancement based on 1.5 grams of cocaine, .6 grams of marijuana, text messages, and a history of drug dealing); *United States v. Posley*, 706 F. App'x 313, 314 (6th Cir. 2017) (affirming enhancement for a possession of four bullets of ammunition case based on 2.3 grams of crack cocaine, 2.6 grams of cocaine, and 40.5 grams of marijuana). There is no "minimum quantity of drugs" needed for this enhancement to apply. *Neal*, 817 Fed. App'x at 148

This Court has repeatedly upheld a district court's factual findings of intent to distribute where a defendant has numerous baggies with

relatively small quantities of drugs. *See, e.g.*, *United States v. Falls*, 533 F. App'x 505, 508 (6th Cir. 2013) (13.7 grams of marijuana in 9 baggies); *United States v. Burton*, 440 F. App'x 474, 476–77 (6th Cir. 2011) (14.5 grams of marijuana in 10 baggies).

Moreover, Clay's carrying of a firearm in public is further indicia of his intent to distribute. *Wilkerson*, 2021 WL 2929721 at *4 ("Openly carrying a firearm in public suggests a great apprehension of serious danger that would be less warranted if the defendant were only a drug user, rather than a drug distributor." (internal quotation marks and alterations omitted)). And Clay offered no alternative "innocent explanation for the firearm" either, which further supports the district court's factual finding of intent to distribute. *Id.* (quoting *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011)).

And although Clay focuses on the absence of other drug-distribution tools at the scene, it is significant that there was no drug-use paraphernalia either. *United States v. Montgomery*, 491 F. App'x 683, 689–90 (6th Cir. 2012) (upholding application of in enhancement in part because "there was no paraphernalia indicating [the defendant's] personal use" in defendant's residence). The cocaine was already

packaged for sale in individual baggies, so it should be no surprise evidence like a scale was absent.

Clay's case is not equivalent to the cases where the Sixth Circuit reversed on this enhancement. In *United States v. Woods*, the defendant was found with six bags of marijuana and no cash, but also provided testimony related to his daily use of marijuana, including explaining that the six bags equated to three cigars, and testifying that he had recently left his source of supply when stopped by police. 26 Fed. App'x 448, 450 (6th Cir. 2001). Clay offered no such testimony or evidence that he possessed the items for personal use. Indeed, under similar factual circumstances, *Burton* distinguished *Woods* on that basis. 440 F. App'x at 476–77.[6]

Similarly, in *United States v. Shields*, the defendant possessed about $10 of marijuana and defendant testified the gun was for protection. 664 F.3d 1040, 1042-45 (6th Cir. 2011). Additionally, in *Shields*, the government did not argue for drug trafficking, but only for

[6] Moreover, Clay's repeated assertions of his extraordinarily heavy drug use that night offer little, if any, support to his claim of solely personal use. If anything, having already ingested a substantial amount of drugs makes it less likely he was solely going to personally use the additional significant amount of cocaine found on him.

simple possession. *Id.* at 1045.[7] Clay possessed more drugs than the defendant in *Woods* and *Shields*, and further provided no explanation for his possession of the firearm. Clay also possessed $228.98 in US currency on his person, R.35: PSR ¶ 11, PageID.107, and had a history of drug trafficking convictions, *id.* ¶¶ 59, 62, 63, PageID.123-28.

Clay is at best offering an alternative permissible view of the evidence. But that does not make the district court's finding implausible and clearly erroneous. *Falls*, 533 F. App'x at 508 (rejecting similar argument because "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quoting *Anderson*, 470 U.S. at 574)). The district court's factual findings related to Clay's possession with intent to distribute cocaine were not clearly erroneous and the application of U.S.S.G. § 2K2.1(b)(6)(B) should be affirmed.

[7] Other cases cited by Clay do not analyze this sentencing enhancement. *See United States v. Monger*, 185 F.3d 574, 577 (6th Cir. 1999) (assessing jury instructions); *United States v. Haywood*, 280 F.3d 715, 720-22 (6th Cir. 2002) (assessing admissibility of other acts evidence at trial).

## III. Clay possessed a stolen firearm.

The firearm Clay possessed had been reported stolen by its registered owner a few months before it was found on Clay. R.35: PSR ¶ 11, PageID.107. The guidelines call for a two-level enhancement if "any firearm was stolen." U.S.S.G. § 2K2.1(b)(4)(A). This applies "regardless of whether the defendant knew or had reason to believe that the firearm was stolen." *Id.* § 2K2.1 cmt. n. 8(B); *United States v. Gibson*, 817 Fed. App'x 202, 205 (6th Cir. 2020) (strict liability enhancement).

Clay's challenge to the district court's application of the stolen firearm enhancement is a factual one – Clay disputes that there was sufficient evidence to find the firearm was in fact stolen by a preponderance of the evidence. Therefore, this Court applies a "clearly erroneous" standard and determine whether "on the entire evidence [this Court] is left with the definite and firm conviction that the district court made a mistake." *United States v. Carroll*, No., 2024 WL 4953549, at *3 (6th Cir. Dec. 3, 2024) (citing *United States v. Tripplet*, 112 F.4th 428,

423 (6th Cir. 2024); *United States v. Histed*, 93 F.4th 948, 954 (6th Cir. 2024)).

Here, the firearm's owner reported it stolen on March 18, 2024. R.42-1: Govt. Sent Ex. 7, PageID.185. The owner reported he believed it had been stolen the night before, and identified his nephew as a possible suspect. *Id.* At sentencing, the owner is referred to as "RA" while the nephew is referred to as "TB." In a second conversation with police, the owner stated additional people had been at his house as well. *Id.* The nephew in question also spoke with police, claiming innocence, and directed police to a different suspect. *Id.* PageID.186. The nephew indicated he had in fact been at the owner's residence the day in question, corroborating the owner's statement, but believed a woman who was also present may have taken the gun. *Id.* The owner was then contacted a third time, and he agreed with the nephew's statement that it may have been a woman. *Id.* An ATF agent contacted the firearm owner in May 2025, and the owner maintained that the firearm had been stolen, but admitted to not being truthful with police in his first report when

identifying who was at his house that day. Gov. Sent. Ex. 8; R.53: Sent. Tr., PageID.284-85.

The inconsistency in the owner's statements concerns only the possible suspects. But for the enhancement to apply, it does not matter who stole the firearm – "regardless of who misappropriated the firearm in the first place, it was dispossessed from its owner and remained so when it was found in [Clay]'s possession." *Carroll*, 2024 WL 4953549, at *4. The owner consistently maintained the firearm had been stolen, and it was ultimately found with Clay, who was not the owner, and did not claim he obtained the firearm from the owner.

At sentencing the government admitted without objection the police report and ATF report detailing all conversations with the firearm owner and nephew. R.42-1: Govt. Sent Ex. 7, PageID.185; Gov. Sent. Ex. 8. Courts have upheld the application of the enhancement on similar—and even perhaps weaker—evidence. *See, e.g.*, *United States v. Harris*, 751 F.3d 123, 128 (3d Cir. 2014) (holding that district court did not clearly err in determining gun was stolen after relying on law enforcement reports and the fact that the defendant had not presented countervailing evidence "[d]espite the firearm owner's possible credibility issues");

*United States v. Pinet-Fuentes*, 888 F.3d 557, 560 (1st Cir. 2018) (upholding district court's finding firearm was stolen where court, based on police report, decided to credit firearm owner's statements over defendant's).

Moreover, an ATF agent testified that a government database showed the firearm as reported stolen and identified the registered owner. R.53: Sent. Tr., PageID.280-85. The agent also testified to her understanding about the prior reports to police and another ATF agent's interview with the owner. *Id.* The agent was also cross-examined by Clay's counsel regarding the reliability of the owner's statements, providing the district court with a full picture of the evidence. *Id.*, PageID.288–90. Based on the evidence, the district court applied the sentencing enhancement noting:

> It's quite obvious that the owner of the gun gave multiple stories as to who might be the perpetrator of the theft, but his story is very consistent that someone stole his weapon, and that weapon is found in the possession of the defendant.

R.53: Sent. Tr., PageID.298. The basis for upholding the district court's finding is even stronger because Clay offered no other explanation for how he came into possession of the firearm. *Harris*, 751 F.3d at 128.

Clay agrees that the United States may generally rely on hearsay evidence to establish a sentencing enhancement. App. Br. at 37. But Clay now argues the reports lack a "minimal indicium of reliability" because the owner's story changed. Overall, the caselaw cited by Clay addressing witness reliability in other context calls for some corroborating evidence to support the witness. *See* App. Br. at 38-39 (citing *Hubbard v Rewerts*, 98 F.4th 736, 749 (6th Cir. 2024)). Here, there is indicium of reliability with respect to the key factual dispute as the owner's statements were entirely consistent in one respect – they told police and ATF that the firearm had been stolen. Additionally, the nephew's statement does in fact corroborate the owner's statement as he agrees he was present on the day in question. The reliability of these statements was directly addressed by the district court.

The evidence presented here is different in kind from the evidence presented in *United States v. Black*, No.23-1622, 2025 WL 1356614, at *3-5 (6th Cir. May 9, 2025). In *Black,* the Sixth Circuit reversed and remanded on the application of the stolen firearm enhancement based on police reports containing "multiple layers of hearsay." *Id.* In that case, investigators contacted the firearm owner after it had been recovered and

at that time the owner reported for the first time that he had heard from a relative that a friend had told them that the gun was stolen. *Id.* at *3. The "layers" of hearsay were evident – the owner himself had no direct knowledge, but was stating what he had heard from someone else, who had in turn heard it from someone else. *Id.* The report therefore had a "quadruple hearsay" problem, making it "insufficiently reliable." *Id.* at *4.

In Clay's case, by contrast, the person making the report – the firearm owner – is reporting to law enforcement his direct knowledge the day after it was stolen. A "district court[] may make credibility determinations and resolve factual disputes at sentencing based on 911 calls, statements arising from police reports, and hearsay evidence generally." *United States v. Lamb*, No. 22-4031, 2023 WL 8628956, at *4 (6th Cir. Dec. 13, 2023); *see also United States v. Paull*, 551 F.3d 516, 527 (6th Cir. 2009) ("The district court's reliance on [a victim's] letter without live testimony from [the victim] is clearly permissible under our law."); *Black*, 2025 WL 1356614, at *3 ("a district court may rely on information

in a police report – including hearsay statements – only if the information has a minimal indicium of reliability").

In *Black*, there were other reasons to doubt the reliability of the owner's statements. There, the owner only claimed the firearm was stolen *after* being confronted by police and *after* the firearm was recovered. The owner there had also claimed that it had been stolen three years ago but never reported it. There was no such "self-serving explanation" by the owner here. *Black*, 2025 WL 1356614, at *4. Instead, the owner affirmatively reported it stolen to police the day after the theft.

Moreover, unlike in *Black*, the government offered additional evidence in the form of the ATF's agent's testimony, which provided at least some additional corroboration, including information about the stolen status and identity of the registered owner. R.53: Sent. Tr., PageID.280–81. Through that testimony, Clay's counsel was able to vigorously cross-examine the ATF agent about the inconsistencies in the owner's reports.

The district court determined that the hearsay statements contained in the reports were sufficiently reliable to establish by a

preponderance that the firearm was stolen. It was not clear error to do so, and this court should affirm.

## IV. Clay's conduct recklessly posed a substantial risk of serious bodily injury to an officer.

The district court properly applied a two-level enhancement based on Clay's actions during his arrest. Clay bit an officer on the groin multiple times as officers attempted to recover the firearm from Clay's waist. R.35: PSR ¶ 10, PageID.107. This Court reviews a district court's factfinding for sentencing enhancements "for clear error and give due deference to a district court's application of the [g]uidelines to the facts." *United States v. Jones*, 81 F.4th 591, 600 (6th Cir. 2023) (quotations omitted).

Section 3C1.2 of the guidelines calls for a two-level increase "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." Fleeing includes "conduct [that] occurs in the course of resisting arrest." U.S.S.G. § 3C1.2 cmt. n. 3. Reckless "means a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care" of a reasonable person. *Id.* § 2A1.4 cmt. n. 1; § 3C1.2 cmt. n. 1. "Serious bodily injury" includes

"injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty, or requiring medical intervention." *Id.* § 1B1.1 cmt. n. (1)(L). Actual harm or injury is not the standard – the enhancement is concerned with whether there was a "substantial risk of serious bodily injury." *United States v. Dial*, 524 F.3d 783, 788 (6th Cir. 2008).

Here, police officers responded to a scene where witnesses reported Clay acting erratically and with a firearm. R.35: PSR ¶ 9-10, PageID.106-107. Police interaction with those witnesses and then with Clay was recorded on body camera footage and admitted at sentencing as Government's Sentencing Exhibit 3. *See also* R.35: PSR ¶ 10, PageID.107 (detailing Clay's arrest). While speaking with witnesses who reported Clay fired the gun at them, the witnesses identified Clay walking down the street. Officers then approached and ordered Clay to stop multiple times, but Clay continued to walk away. After a verbal warning, Clay was tased. Officers then worked to place Clay in handcuffs with some difficulty. After he was handcuffed, officers started to roll Clay over: one officer then stated Clay was "reaching," another officer stated they saw a gun. Officers then worked to restrain Clay and recover the gun. While

that occurred, a third officer stated Clay was biting him. After Clay was under control, that officer stated Clay had bitten him on the penis. Gov. Sent. Ex. 3 at 07:09. That officer went to a local hospital for treatment and he had a cut on his thumb and blood on his groin. R.35: PSR ¶ 10, PageID.107. Clay did not contest the PSR description of the arrest, that he bit an officer during his arrest, or that the officer received medical treatment, however claimed it was an act of self-defense. *Id.*

The district court applied this enhancement after reviewing Government's Sentencing Exhibit 3 and the PSR description. The district court noted that the arrest was a "confrontation" and "clearly a situation where there's a substantial risk of injury to the officers" and noted "indeed one officer sustains bites from the defendant." R.53: Sent. Tr., PageID.300.

To start, while the caselaw Clay cites may highlight examples of "extreme physical pain," "protracted impairment" or requiring "medical intervention," "it is simply a logical fallacy to infer from a holding that 'X is enough' for the enhancement that 'less than X is not enough.'" *United States v. Terry*, 83 F.4th 1039, 1044 (6th Cir. 2023). Critically, reliance on those cases also largely misses a key component of this enhancement

– § 3C1.2 applies not only to injuries sustained, but also to injuries that are *risked*. For example, *United States v. Stamper*, which Clay relies on repeatedly, interpreted U.S.S.G. § 2B3.1(b)(3)(A), which asks whether a victim *sustained* a bodily injury. 91 F. App'x 445, 463 (6th Cir. 2004); *see also United States v. Mejia-Canales*, 467 F.3d 1280, 1281 (10th Cir. 2006) (same); *accord* App. Br. at 59 (arguing that "words, placed in different contexts, sometimes mean different things" and noting that "this Court has repeatedly stated that the definition of 'bodily injury' looks at 'a particular result, not the defendant's conduct'"). The cases cited by Clay largely do not grapple with whether a serious bodily injury was risked. While they can assist with interpreting terms used in the guidelines, they cannot be relied on for this assessment.

Many cases where U.S.S.G. § 3C1.2 was applied and affirmed on appeal involve no actual injury but only the significant risk of one, such as when a defendant attempts to drive away in a vehicle or when a defendant discards a loaded firearm. *See e.g.*, *United States v. Howard*, 301 F. App'x 446, 448-49 (6th Cir. 2008) ("risk created by throwing a cocked and loaded gun is obvious"); *United States v. Golson*, 95 F.4th 456, 464 (6th Cir. 2024) (affirming risk created by reckless flight in a vehicle,

even when defendant was a passenger). The question is not whether the officer Clay bit suffered injuries similar to "rape, pistol-whipping, stabbing, or cuts to the head," *see* App. Br. at 49, but whether his actions "recklessly created a substantial risk of . . . serious bodily injury." Additionally, this Court has upheld application of the enhancement when a defendant "pull[s] out any firearm in view of police officers" regardless of "whether a firearm is loaded or unloaded" because the action "created a risk that officers might fire their weapons" and injure other officers or bystanders. *United States v. Jones*, 81 F.4th 591, 601 (6th Cir. 2023) (cleaned up) (citing *United States v. Brooks*, 763 F. App'x 434, 440 (6th Cir. 2019)).

While officers believed he was reaching for a firearm, Clay bit an officer repeatedly on the penis, through his pants, to the point that blood was found in the officer's groin during a medical examination. Human bites have the capacity to inflict serious bodily injury. *United States v. Irving*, 431 Fed. App'x 513, 516 (7th Cir. 2011) ("a human bite is about the most dangerous bite that one can receive" (citing *United States v. Sturgis*, 48 F.3d 784, 787 (4th Cir. 1995)). Neither *Irving* nor *Sturgis* interpret the § 3C1.2 provision, however they do speak directly to the

dangerousness of a human bite. The injury risked can be both from a risk of infection and a risk of a physical bodily injury. The risk of serious bodily injury created by those actions are "obvious." *See Howard*, 301 F. App'x at 448–49. A bite may cause "extreme physical pain"; a bite may cause "protracted impairment" to an organ bitten or through infection; a bite can also require medical intervention, hospitalization, or physical rehabilitation. Especially a bite to the groin area not only once but multiple times.

The district court's application of § 3C1.2 was not clearly erroneous and should be affirmed.

**V. The district court did not plainly err in ruling the sentence be consecutive to specific cases Clay was on parole for.**

Rejecting Clay's request for a concurrent sentence, the district court ordered Clay's sentence to be consecutive to "any remaining time to be served" on four identified prior convictions. R.44: Judgment, PageID.190.

Clay erroneously argues that this Court should review for an abuse of discretion. True, this Court ordinarily reviews a district court's decision to impose consecutive sentences under an abuse of discretion standard. *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009). But

Clay not only failed to preserve the issue, he waived or invited error by telling the court that it had adequately addressed his arguments, including for a concurrent sentence. In his sentencing memo, Clay sought a concurrent sentence on the basis that he was "looking at more than a decade in prison, which seems quite sufficient to address the conduct here, without adding any consecutive state sentences for the same behavior." R.39: Def. Sent. Mem., PageID.175–76. He reiterated that request at the sentencing hearing. R.53: Sent. Tr., PageID.308. At the end of the hearing, the court asked if he was "satisfied [the court had] addressed all your arguments on the record," and he responded, "Yes, Your Honor." *Id.*, PageID.315.

Given that affirmative representation, Clay cannot now charge the district court with inadequately considering and addressing those same considerations in ordering the sentence consecutive. Under comparable circumstances involving a materially similar question, this Court has repeatedly declined to review appellate arguments that a district court failed to adequately address a defendant's arguments. *United States v.*

*Carter*, 89 F.4th 565, 570 (6th Cir. 2023); *United States v. Jett*, 154 F.4th 459, 471 (6th Cir. 2025).

Even absent waiver or invited error, this Court should review Clay's argument only for plain error. That is because when a defendant argues for the first time on appeal that his sentence is procedurally unreasonable, a "plain error" standard applies. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc). Here, although Clay requested a concurrent sentence, he did not object to the adequacy of the district court's consideration or explanation at the end of the sentencing hearing. *United States v. Pablo-Ramos*, 817 F. App'x 112, 114 (6th Cir. 2020) ("A defense counsel's general objection to the imposition of a consecutive sentence at the sentencing hearing does not preserve a challenge on appeal to the sufficiency of the district court's *explanation of its reasoning* for that sentence." (emphasis original)).

Under any standard of review, the district court's consideration and rationale was adequate. Section 5G1.3 of the guidelines provides for the district court's discretion of whether to run a federal sentence consecutive to an undischarged term of state imprisonment for a variety of possible procedural postures. Provision (d) is a "Policy Statement" noting that

circumstances that do not fit into § 5G1.3(a) – (c) are left to the discretion of the district court "to achieve a reasonable punishment for the instant offense." The guidelines application notes offers factors for a court to consider: "(1) the § 3553(a) factors; (2) the type and length of the prior undischarged sentence; (3) the time served and likely to be served on the undischarged sentence; (4) the procedural posture of the undischarged sentence . . . ; and (5) any other relevant circumstance." *United States v. Potts*, 947 F.3d 357, 369 (6th Cir. 2020) (citing U.S.S.G. § 5G1.3 cmt. n. 4(a)). The commentary further advises that when a:

> defendant was on federal or state probation, parole, or supervised release at the time of the instant offense, and has [been] revoked . . . the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation.

U.S.S.G. § 5G1.3 cmt. n. C.

Clay argues that the district court erred by failing to make an explicit reference to § 5G1.3 and the record did not reflect the district court considered the applicable factors. App. Br. at 61-62. Overall, the guidelines provide for significant discretion to the district court in decisions such as this. This Court has refused "to reverse a district court for failing to explicitly reference the § 5G1.3 factors . . . [s]o long as it is

'generally clear' from 'the totality of the record' that the court followed the guidance provided by Application Note 4(a)." *United States v. Stacy*, No. 21-1427 (6th Cir. Feb. 28, 2022) (quoting *Potts*, 947 F.3d at 369; citing *United States v. Harmon*, 607 F.3d 233, 239 (6th Cir. 2010)). This review considers whether the district court "followed the rationale provided in [the guidelines]" which can be demonstrated in the record "either in a statement by the district court or by reference to the PSR or other documents." *Potts*, 947 F.3d at 369. This Court also recognizes that a district "court's explanation for the length of the sentence and the rationale for imposing a consecutive sentence may be intertwined." *United States v. Salisbury*, No. 23-2071, 2024 WL 5075401, at *4 (6th Cir. Dec. 11, 2024).

The record shows the district court's rationale was generally clear and that it considered the appropriate factors. In this case, the PSR identified § 5G1.3(d) and recommended that pursuant to applicable commentary, Clay's sentence be consecutive to any sentence he received for parole violations. R.35: PSR, PageID.139 and 148-49. The PSR further provided details on all of Clay's prior and pending criminal cases relevant to this decision, including the time Clay served in prison and his time on

parole. *Id.* ¶¶ 58-59 and 62-63, PageID.121-25 and 126-29. By expressly adopting the presentence report without change, the district court took into consideration the applicable guidelines provisions. *Pablo-Ramos*, 817 F. App'x at 115. Indeed, it followed the guidelines' recommendation to run the sentence consecutively to a parole sentence.

Clay, in his Sentencing Memorandum and during the sentencing hearing, requested a sentence concurrent to both his parole cases and pending state charges that were not yet adjudicated. The district court provided a lengthy allocution explaining the sentence imposed and denying a motion for a downward variance based on the § 3553(a) factors and the court's discretion.

Immediately before ordering the sentence to run consecutively, the district court clearly stated it was considering the 3553(a) factors, had "taken the guidelines into account as an initial benchmark" but recognized the guideline range "is one of the array of factors warranting consideration." R.53: Sent. Tr., PageID.308. The court then considered and applied the relevant sentencing factors. Revealing the intertwined nature of its determination, the district court then "imposed a consecutive sentence immediately following its evaluation of the §

3553(a) factors." *United States v. Albers*, 489 F. App'x 73, 77 (6th Cir. 2012); *see, e.g.*, *United States v. Kitchen*, 428 F. App'x 593, 597 (6th Cir. 2011) ("After sentencing [defendant] to 36 months, the court immediately considered whether the sentence should run consecutive to the [state] sentence, demonstrating that the decision to impose a consecutive sentence was not divorced from the § 3553(a) analysis.").

At the end of its consideration of the sentencing factors, the district court stated:

> I also consider the request of the defendant that the sentence imposed here be concurrent with his remaining exposure on the . . . four felony offenses for which he is on parole. That request is denied. I am going to order a consecutive sentence in this case…

*Id.*, PageID.312.[8] The district court "need not conduct a separate Section 3553(a) analysis for the concurrent or consecutive nature of a sentence." *United States v. Barnett*, No. 25-5355, 2025 WL 3244953, at *3 (6th Cir. Nov. 20, 2025) (cleaned up) (citing *United States v. Miller*, Nos. 23-

---

[8] In one respect, the district court did grant Clay's request by not ordering his federal sentence be consecutive to any state sentence he may receive on the *pending* state charges, which were based on the same July 9, 2024 arrest. *See* R.35 PSR ¶¶ 71-72, PageID.130-31.

5270/5436, 2025 WL 459648, at *13 (6th Cir. Feb. 11, 2025); *United States v. Berry*, 565 F.3d 332, 343 (6th Cir. 2009).

And, the district court specifically raised Clay's issues with abiding by parole. *See, e.g.*, R.53: Sent Tr., PageID.310-311 ("four months after his release on parole he's involved in this incident, he has unfortunately not been able to confirm his conduct"). Because of that, in part, the need for specific deterrence was "an important factor." *Id.*, PageID.311. The district court further identified the specific docket numbers the federal sentence would be consecutive to, information obtained from the PSR itself, which further contained details of the prior convictions and sentences. *Id.*, PageID.312. That consideration supported the district court's consecutive sentencing decision. *See United States v. Massey*, 758 F. App'x 455, 468 (6th Cir. 2018).

The two cases Clay primarily relies on to claim that this "Court has repeatedly reversed and remanded" for failure to consider the § 5G1.3 factors, are *United States v. Johnson*, a 2009 case, and *United States v. Coleman*, a 1994 case. Neither of those cases help Clay, especially in light of this Court's more recent case law, such as *Potts*. *Coleman* was decided before the Supreme Court case of *United States v. Booker*, 543 U.S. 220

(2005), which made the sentencing guidelines advisory instead of mandatory, and interpreted a drastically different version of § 5G1.3's commentary notes than the notes in the 2024 guidelines. *See generally United States v. Coleman*, 15 F.3d 610, 612-13 (6th Cir. 1994).[9] In *Johnson*, the sentence was remanded for reasons other than the district court's consecutive sentencing decision. *See United States. Johnson*, 553 F.3d 990, 995 (6th Cir. 2009). The Sixth Circuit reversed and remanded to allow the district court to "impose a sentence with full awareness of [it's] authority" to vary from guidelines assessment of crack vs. cocaine. *Id.* at 996. With that decision made, the Court also noted in dicta that "[o]n remand the district court should show that it has adequately considered § 5G1.3(b) and the relevant commentary," but noted that the record did already reflect that the district court considered the § 3553

[9] *Coleman* interpreted the November 1992 sentencing guidelines which did not include the factors currently listed in Application Note 4, which Clay now argues the district court failed to consider. *See* U.S.S.G. § 5G1.3 (Nov. 1992) available at https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/1992/manual-pdf/Chapter_5.pdf.

factors and appeared to understand the undischarged sentence at issue. *Id.* at 998. Both of these cases are distinguishable.

By possessing the firearm in the instant case, Clay violated parole in four different state court cases which date back to 2012. The PSR recounts a lengthy criminal history. The district court, after hearing argument from Clay, and in conjunction with a lengthy explanation for the sentence imposed, ordered the federal sentence "be served consecutive to any remaining time to be served" on four specific cases. R.44: Judgment, PageID.190. The district court took into account the necessary considerations, and its rationale for the consecutive nature of its sentence is generally clear from the record. Even if this argument were reviewable, there was no error, much less a plain one.

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment of the district court.

Respectfully submitted,

TIMOTHY VERHEY
United States Attorney

Dated: February 17, 2026

/s/ *Alexia A. Jansen*
ALEXIA A. JANSEN
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2026, the foregoing document was electronically filed. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

I further certify that a copy of the foregoing document was mailed on this date to the opposing party if he/she was not registered to receive the document by the Court's electronic filing system.

/s/ *Alexia A. Jansen*
ALEXIA A. JANSEN
United States Attorney's Office
Post Office Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 32(a)(7) and (g) of the Federal Rules of Appellate Procedure, the undersigned certifies that this brief complies with the type-volume limitation and contains no more than 13,000 words as provided by Rule 32(a)(7)(B). A word count was made using Word 365 and the brief contains 8,870 words.

TIMOTHY VERHEY
United States Attorney

Dated: February 17, 2026

/s/ *Alexia A. Jansen*
ALEXIA A. JANSEN
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Description of Entry | Date | Record Entry Number | Page ID Number Range |
|---|---|---|---|
| Indictment | 09/11/2024 | 1 | 1 |
| Report and Recommendation | 01/14/2025 | 28 | 53-54 |
| Notice of Sentencing | 01/16/2025 | 29 | 55 |
| Order Adopting | 01/29/2025 | 31 | 57 |
| Initial Presentence Report | 04/17/2025 | 32 | 58-96 |
| Objection to Presentence Report Government | 05/01/2025 | 33 | 97-100 |
| Objection to Presentence Report Defense | 05/02/2025 | 34 | 101-102 |
| Final Presentence Report | 05/12/2025 | 35 | 103-149 |
| Sentencing Memorandum Government<br>Exhibits 01A-03, 04, 05, 06 | 05/19/2025 | 36<br>36-1-4 | 150-160<br>161-165 |
| Sentencing Memorandum Defense | 05/19/2025 | 39 | 169-177 |
| Order Motion for Leave | 05/20/2025 | 40 | 178 |
| Media Exhibit | 05/20/2025 | 41 | 179 |
| Response to Defense Sentencing Memorandum<br>Exhibit 7 | 05/27/2025 | 42 | 180-184<br>185-186 |
| Judgment | 06/03/2025 | 44 | 189-195 |
| Statement of Reasons | 06/03/2025 | 45 | 196-199 |

| Description of Proceeding or Testimony | Date of Hearing | Record Entry Number | Page ID Number Range |
|---|---|---|---|
| Sentencing Transcript | 06/02/2025 | 53 | 256-318 |